In re W.J. CHUDY and Marie P. Chudy, Debtors.

BANK OF RULEVILLE, Movant,

v.

W.J. CHUDY and Marie P. Chudy, Debtors, Respondents.

Bankruptcy No. E85–20020.

United States Bankruptcy Court, N.D. Mississippi.

March 25, 1986.

Fincher G. Bobo, Chapman, Bobo & Heaton, Clarksdale, Miss., for W.J. and Marie P. Chudy.

Robert Lawson Holladay, Townsend, McWilliams & Holladay, Drew, Miss., for Bank of Ruleville.

Marc E. Brand, Hobbs & Brand, and Roger Meagher, Jackson, Miss., for Federal Land Bank.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the motion filed by the Bank of Ruleville seeking relief from the automatic stay, etc.; response thereto filed by the Debtors, as well as, their motion to determine the secured status of the Bank of Ruleville's claim; all parties being represented before the Court by their respective attorneys of record; on the presentation of proof, oral argument, and memoranda of law; and the Court having heard and considered same finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G)(K) & (O).

### II.

Prior to Bankruptcy, W.J. Chudy and Marie P. Chudy, hereinafter referred to as Debtors, executed two promissory notes secured by deeds of trust and a stock assignment in favor of the Bank of Ruleville, Mississippi, hereinafter referred to as Bank. The deeds of trust encumbered 786 acres of farmland in three counties, a grain storage and cleaning facility, the Debtors' residence and certain equipment. The stock assignment related to 300 shares of Indi-Bel, Inc., stock.

The Debtors defaulted on the payments under the notes and the Bank referred the matter to its attorney for collection and/or foreclosure. The Bank's attorney researched the titles to the properties encumbered by the deeds of trust and published the requisite notices in order to schedule the foreclosure sales. The sales were set for February 26, 1985. However, on February 22, 1985, the Debtors filed for bankruptcy under Chapter 11 of the Bankruptcy Code.

After the filing of the Debtors' petition, the Bank instituted proceedings to lift the automatic stay provisions of § 362(a) of the Bankruptcy Code (11 U.S.C. § 362(a)). Subsequently, the Debtors filed their motion to determine the secured status of the Bank's claim and to estimate the claim of the Bank. By an order of this Court dated December 30, 1985, the automatic stay was lifted as to the stock, mentioned above, valued at $12,000.00; 220 acres of catfish ponds, valued at $396,000.00; and 260 acres of row crop land valued at $186,089.80. A

value of $142,000.00, was placed on the Debtors' residence.

In regard to the motion to determine the secured status of the Bank and to estimate its claim, the Bank maintained that its attorney's fees and trustee's fees should be included in its secured claim as provided in the deeds of trust and promissory notes. The deeds of trust call for 15% trustee's fees, as set forth hereinbelow, while the promissory notes call for reasonable attorney's fees.

### III.

Both parties agree that the Bank is an oversecured creditor as contemplated under § 506(b) of the Bankruptcy Code, (11 U.S.C. § 506(b)), which provides as follows:

> (b) to the extent that an allowed secured claim is secured by property, the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ As stated in § 506(b), once a determination is made that a creditor is "oversecured", that creditor may look to the underlying security agreements for a determination of what costs and interest accrued will be allowed as part of its secured claim.

In the instant case, the promissory notes evidencing the debt owed to the Bank call for "reasonable" attorney's fees "if ... [the] note is placed in the hands of an attorney for collection." The deeds of trust state that:

> [O]ut of the *proceeds of such sale or sales* said Trustee shall first pay the expenses of executing this trust, including a trustee's fee, which is hereby fixed at 15 per cent of the indebtedness secured, and to be secured hereby and shall then pay and satisfy all indebtedness which may then be secured by this instrument including attorney's fees, if any, and it is agreed that the attorney's fees hereinbefore provided for shall accrue on said notes, if the same be placed in the hands of an attorney for collection after the same has been declared due and payable as hereinbefore provided; any balance remaining shall be paid to the grantor or grantors herein, or any of them. [emphasis added]

For purposes of discussion, it is noted that a 15% trustee's fee in this case would amount to approximately $46,830.53. (15% × $312,203.53, the amount of the debt, exclusive of collection fees, as of December 30, 1985.)

■ Had there been a completed foreclosure sale, the trustee and attorney would ordinarily be paid their fees from the *proceeds* of the sale. However, in the instant case, there are no proceeds of sale since the Debtors filed for bankruptcy before the sale was consummated. Therefore, since there was no effective foreclosure, the terms of the deeds of trust cannot play a part in the determination of the amount of trustee's fees that could be included in the Bank's secured claim. The deeds of trust by their own terms set forth clearly a condition precedent to the assessment and collection of fees resulting from foreclosure. No trustee's fee at 15% of the indebtedness secured will be allowed in this proceeding.

### IV.

In light of the above discussion, the calculation of attorney's fees and trustee's fees should be determined by use of the "reasonable" standard in § 506(b). This, of course, coincides with the provisions set forth in the promissory notes. It is therefore necessary to look to the fee statement and affidavits submitted by the Bank's attorney to determine a reasonable fee to be allowed as part of the Bank's secured claim.

■ Upon examination of the fee statement, the Court observes that the Bank's attorney is requesting compensation at the rate of $85.00, per hour, for 306¼ hours expended in matters related to

this proceeding. This represents a total request of attorney's fees in the sum of $26,031.25. The Bank's attorney has requested reimbursement for expenses incurred in the sum of $2,393.58. The total of the combined figures amounts to $28,424.83. A careful review of the fee statement has revealed the following significant facts, to-wit:

A. Pre-petition expenses related to the scheduled foreclosure sales, which were not completed, amounted to only $678.37, including the publication costs.

B. The Bank's attorney indicated that he spent approximately 42 hours pre-petition in preparation of the aborted foreclosure sales. Calculated at the rate of $85.00, per hour, this would result in a pre-petition attorney's fee in the sum of $3,570.00.

C. Over 73 hours were spent in the preparation for and the hearing on the Bank's motion seeking relief from the automatic stay. Considering the underlying factual circumstances existing in this case, e.g., only one hearing which lasted less than one-half day, these hours are found to be excessive in comparison to the complexity of the issues involved.

D. The copying rate charged is 35¢, per copy, while the mileage rate charged ranges from 40¢ to 53¢, per mile. These mileage rates appear excessive when compared to the fact that the United States Government reimburses mileage charges at the rate of 20½¢, per mile.

E. The Bank's attorney indicates that he expended at least 50½ hours researching and briefing the trustee's fees and attorney's fees issue. Again, the hours billed are excessive in comparison to the complexity of the issue involved.

Having thoroughly considered the applicant's fee statement and having likewise considered the objections thereto filed by the Debtor, on the basis of those factors cited in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.C.A.—1974) and *In Re: First Colonial Corp. of America*, 544 F.2d 1291, 11 CBC 133 (5th

Cir.C.A.—1977), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), I find the applicant to be entitled to pre-petition and post-petition attorney's fees in the sum of $8,500.00, in addition to reimbursement of his out-of-pocket expenses in the sum of $2,100.00, for total compensation in the sum of $10,600.00. The award of attorney's fees is based on a finding that 100 hours would have been reasonably expended in this proceeding, calculated at the rate of $85.00, per hour. This award should be added to the total of this creditor's allowed secured claim.

An Order will be entered consistent with this Opinion.