**In re Sam ALBERTO, Debtor.**

**Bankruptcy No. 90 B 06367.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 3, 1991.

Edward P. Freud, Ruff, Weidenaar & Reidy, Ltd., Chicago, Ill., for Tinley Park Bank.

Max Chill, Steven R. Radtke, Chill, Chill & Radtke, P.C., Chicago, Ill., for the debtor, Sam Alberto.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the fee application of Tinley Park Bank (the "Bank") by and through its counsel, Ruff, Weidenaar & Reidy, Ltd. pursuant to 11 U.S.C. § 506(b) for the allowance of $10,000.00 in compensation for reimbursement of its attorneys' fees. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. An objection to the fee application was filed by the Debtor. For the reasons set forth herein, the Court hereby allows in full the requested compensation in the amount of $10,000.00.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Many of the relevant facts and background of the case are contained in earlier Opinions and need not be repeated for purposes of this matter. *See In re Alberto,* 121 B.R. 531 (Bankr.N.D.Ill.1990); *In re Alberto,* 121 B.R. 527 (Bankr.N.D.Ill.1990); *In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill. 1990). On April 5, 1990, the Debtor filed a Chapter 11 petition. The Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Hotly contested litigation among the Debtor and various

creditors, including the Bank, was pending in several forums which included the Seventh Circuit Court of Appeals, the District Court for the Northern District of Illinois and this Court. Such litigation has now been resolved by a global settlement which has been substantially consummated. The main issues litigated were whether the beneficial interest of the corpus of a land trust, including certain real property and improvements commonly known as 2424–2554 South Laflin Avenue, Chicago, Illinois (the "Laflin property") was an asset of the Debtor's estate, and what were the interests in and claims against same by the various parties.

The Bank is the holder of a first trust deed, dated June 10, 1983, encumbering the Laflin property. The trust deed secures an installment note of even date with a "due on sale clause" in the original principal amount of $303,783.95 made by the land trustee holding title to the Laflin property. The note matured on June 1, 1988. On June 10, 1983, the Debtor, as beneficiary, also collaterally assigned the beneficial interest under the land trust holding title to the Laflin property to the Bank. Moreover, on that same date, the Debtor personally executed a guaranty, and the land trustee executed a recorded assignment of rents in favor of the Bank, further securing the payment of the underlying indebtedness. Pursuant to the terms of the Debtor's personal guaranty, the Bank is entitled to recover from the Debtor, "expenses (including attorneys' fees and legal expenses) paid or incurred by the Bank in endeavoring to collect the Liabilities, or any part thereof, and in enforcing this guaranty." The right of recovery, however, is limited to the principal amount plus interest. In addition, in a confession of judgment cognovit provision, the guaranty contractually limits the recovery of attorneys' fees to fifteen percent of the unpaid amount.

The Bank timely filed its secured proof of claim on October 30, 1990, in the amount of $110,414.70, plus interest at the loan contract rate of $38.60 per diem, plus all costs, expenses and attorneys' fees (which latter amounts were not specified in the proof of claim). No objections thereto were filed. The claim for unpaid interest and principal has been paid out of the settlement leaving only the unpaid attorneys' fees and costs to be determined and allowed by the Court. Pursuant to an agreement with counsel for the Debtor, the Bank has agreed to limit its fee request to $10,000.00, notwithstanding its undisputed oversecured status under section 506(a).

At the time of the initiation of the bankruptcy proceedings, the Bank's loan had matured and was in default. As a result of litigation pending in the district court between the Debtor and The CIT Group/Equipment Financing, Inc. ("CIT"), the Bank was served with a citation to discover assets by CIT in aid of its judgment. Due to such action by CIT, the Bank was required to defend its interests and participate in those proceedings pending in that forum. The Debtor also initiated an adversary proceeding before this Court in which the Bank was made a party defendant. Moreover, in another matter before the Court in the core bankruptcy proceeding, CIT, the Debtor, and the Bank each claimed the right to all of the rental proceeds which accrued and were paid by tenants as a result of the post-petition use and occupancy of the Laflin property. This latter dispute was ultimately determined in favor of the Bank by agreed order.

Subsequently, on April 16, 1991, pursuant to a global settlement resolving all disputes in all forums, the Court approved the sale of the Laflin property and certain items of personal property, pursuant to 11 U.S.C. § 363, to the Debtor's son for the sum of $1,225,000.00, with the various parties' interests attaching to and being paid from the sale proceeds in amounts as the parties so agreed. The purchase agreement allocated a value of $1,050,000.00 to the real estate subject to the Bank's first trust deed.

## III. ARGUMENTS OF THE PARTIES

The Bank claims that because the Debtor and CIT vigorously pursued their respective theories as to whether the Laflin prop-

erty was or was not an asset of the estate, coupled with the claim of D & D Disposal for a mechanic's lien therein and other parties' claims of interest, the Bank was made a party defendant to an adversary proceeding and was required to appear, answer and defend its rights. The Bank contends that all time expended by its counsel was reasonable, fair and necessary in order to protect its security and to facilitate the ultimate resolution. A total of 81.45 hours by the Bank's attorneys and 8.00 hours by their law clerks were expended for an aggregate fee of $10,311.25.

The Debtor argues that the time expended was excessive because the Bank's security interest was never challenged and it was at all times fully secured. The Debtor further claims that the time spent was not reasonable and necessary to the representation of the Bank. The Debtor suggests that a fair and reasonable amount constitutes five percent of the amount of the indebtedness ($110,414.70) or approximately $5,500.00.

In response to the Debtor's objection, the Bank states that there is no support in the Bankruptcy Code or applicable case law which justifies the Debtor's conclusion that five percent of the Bank's indebtedness is an appropriate standard for determining the allowance of attorneys' fees. In addition, the Bank contends that the Debtor is unable to direct the Court to any time entries that suggest unnecessary or inflated billing. Furthermore, the Bank states no objection was raised to the $125.00 regular hourly rate charged by its primary counsel, which is within the standard billing range for experienced counsel in Chicago, Illinois. The Bank further asserts that its security interest was jeopardized by the "hair pulling contest" between the Debtor and other parties in interest.

## IV. STATUTORY AUTHORITY

■ Section 506(b) of the Bankruptcy Code provides in relevant part:

To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable fees*, costs, or charges *provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (emphasis added). To substantiate a claim for attorneys' fees under section 506(b), the Bank must satisfy four requirements in order for its fees and costs to be allowed as part of its claim: 1) the Bank must have an allowed secured claim; 2) the Bank must be oversecured; 3) the underlying documents must provide for such fees and costs; and 4) the claim for fees and costs must be reasonable. *See In re Josephs*, 108 B.R. 654, 656 (Bankr. N.D.Ill.1989); *In re Rutherford*, 28 B.R. 899, 902 (Bankr.N.D.Ill.1983); *In re Salazar*, 82 B.R. 538, 540 (9th Cir.BAP 1987); *In re Reposa*, 94 B.R. 257, 259–260 (Bankr. D.R.I.1988). The Bank has an allowed secured claim of over $110,000.00 and is undisputedly oversecured on property which sold for $1,050,000.00. Additionally, the underlying security documents provide for attorneys' fees of up to fifteen percent of the unpaid balance owed, plus all collection expenses and costs. Thus, only the fourth requirement is at issue and contested by the parties, namely, whether or not the requested amount of fees are reasonable.

■ Section 506(b) provides that only "reasonable fees, costs or charges" are compensable. In making a determination of reasonableness, the Court does not look to state law, but rather makes an independent evaluation. *See In re 268, Ltd.*, 789 F.2d 674, 677 (9th Cir.1986); *Unsecured Creditors' Committee 82–00261c–11A v. Walter E. Heller & Co. Southeast, Inc.*, 768 F.2d 580 (4th Cir.1985). The Court has broad discretion to determine what constitutes a "reasonable" fee. *In re Mills*, 77 B.R. 413, 419 (Bankr.S.D.N.Y.1987). The Court must review the fees to ensure that they are reasonable in scope and amount. *In re Calzaretta*, 35 B.R. 92 (Bankr. N.D.Ill.1983) lists several factors that must be considered when determining the reasonableness of fees under section 506(b). The criteria to be evaluated in determining reasonableness of fees are: 1) time and labor required; 2) novelty and difficulty of

questions; 3) skill requisite to perform legal services; 4) preclusion of other employment by acceptance of the case; 5) customary fee; 6) whether the fee sought is fixed or contingent; 7) time limitations; and 8) the amount involved and results achieved. *Id.* at 94; *see also In re Mid–State Fertilizer Co.*, 83 B.R. 555, 557 (Bankr.S.D.Ill. 1988). Moreover, only necessary services will be compensated. *In re Wonder Corp. of America*, 82 B.R. 186 (D.Conn.1988); *Reposa*, 94 B.R. at 260. Courts frequently disallow or reduce fees sought by secured creditors on finding that the work performed was unnecessary or excessive. *See e.g., In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 529–530 (Bankr.W.D.Mo.1989); *Mid–State Fertilizer*, 83 B.R. at 557.

■ Federal bankruptcy law should only modify state law contract rights to the extent necessary to accomplish bankruptcy goals. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Justice O'Connor wrote a dissent in the Supreme Court's 1989 decision *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), noting a concern for preserving the value of contract rights. She stated in part, "[w]hen the creditor extended credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy." *Id.* at 254, 109 S.Ct. at 1037 (O'Connor, J., dissenting).

## V. DISCUSSION

■ The Court has carefully reviewed the fee application and finds that full allowance of compensation is mandated, over the objection of the Debtor. The $10,000.00 requested amount is well within the fifteen percent ceiling of recovery under the terms of the guaranty expressly agreed to by the Debtor. The Court finds that the services rendered were reasonable, necessary and authorized by the loan documents. The time expended by counsel for the Bank was reasonable and necessary given the extent of litigation involved, as well as the polarity of positions taken by the various interested parties that potentially jeopardized the Bank's secured position.

The Court has considered all the *Calzaretta* factors. The time period of the services rendered covered June, 1990 through April, 1991. The total time expended of almost ninety hours is not excessive in light of the hotly contested litigation to which the Bank was made a party. Although the legal issues concerning the Bank's interests were neither novel nor difficult, its attorneys skillfully and diligently rendered the services to protect its senior interest. While there is no showing or contention that the Bank's attorneys were precluded from other employment by accepting the representation of the Bank's interests, the fees charged are at the customary, usual and regular rates charged by its attorneys. In a broad sense, the fees, although on an hourly billing rate, are "contingent" because they are subject to review, determination and allowance by the Court in the exercise of its discretion under section 506. Finally, no time limitations were involved in the representation. The amount involved, however, is reasonable considering the principal and accrued, but unpaid interest components of the Bank's claim and the excellent results achieved. The Bank's underlying unpaid claim was paid in full and protected with the advocacy and assistance of the Bank's attorneys. A prudent and equitable exercise of the Court's discretion is to allow in full the requested fees, as slightly reduced by agreement of counsel.

The five percent figure that the Debtor sets forth without explanation of how that figure was determined to be reasonable and fair, contains no support in either the Bankruptcy Code or any cited case authority interpreting same under section 506(b). Hence, the Court will not follow the Debtor's recommendation. There are no compelling reasons or authorities not to allow the requested fees in full. Consequently, the Court hereby allows the fees in the amount of $10,000.00.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby reimburses Tinley Park Bank for its requested attorneys' compensation in the amount of $10,000.00.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.